# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN C. BUTTOLPH, | : | |
| Plaintiff, | : | 1:16-cv-0325 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| PRIME CARE MEDICAL INC., | : | |
| *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

### March 18, 2020

Steven C. Buttolph ("Buttolph" or "Plaintiff"), at all relevant times, an inmate incarcerated at the Perry County Prison, New Bloomfield, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, on February 22, 2016, naming as Defendants PrimeCare Medical Inc. ("PrimeCare"), Carl A. Hoffman, D.O. ("Dr. Hoffman"), and Tanya Schisler, PA ("Schisler").  (Doc. 1).

Pending is Defendants' motion (Doc 46) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

## I.  STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340

(3d Cir. 1990).  "[T]his standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).

A disputed fact is "material" if proof of its existence or nonexistence would affect

the outcome of the case under applicable substantive law.  *Id.*; *Gray v. York*

*Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United*

*Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d

Cir. 1991).

       The party moving for summary judgment bears the burden of showing the

absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d

Cir. 1996).  Although the moving party must establish an absence of a genuine

issue of material fact, it need not "support its motion with affidavits or other

similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323

1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## II.   STATEMENT OF MATERIAL FACTS

PrimeCare has a contract to provide medical services to inmates incarcerated in Perry County. (Doc. 47, ¶ 1; Doc. 1, ¶ 1). Hoffman was the Medical Director and supervising physician at Perry County Prison between January 1, 2009 and June 1, 2014. (Doc. 47-5, p. 4). Hoffman never examined Buttolph. (Doc. 47-3, p. 9). Schisler is a certified physician assistant who was employed by PrimeCare to provide medical services to inmates at the Perry County Prison. (Doc. 47, ¶ 2;

Doc. 53, ¶1).

A.     <u>2009</u>

Upon entering the Perry County Prison on January 11, 2009, Buttolph
underwent a Receiving Screening and Health Assessment.  (*Id.* at 3; *Id.* at 1).
During the screening and assessment, he informed Marilyn Williams, LPN that he
uses Proctosol for bleeding hemorrhoids, which began approximately one year
prior to his incarceration.  (*Id.* at 3-5; *Id.*).  Nurse Williams contacted Ms. Schisler
who issued an order that he be provided Proctosol cream.  (*Id.* at 4; *Id.* at 1).

B.     <u>2010</u>

On September 21, 2010 Buttolph requested medical attention for a painful
hemorrhoid.  (Doc. 54, ¶ 3).  Schisler examined him on September 29, 2010, and
assessed him as having a large thrombosed hemorrhoid in the 3 o'clock position
and a non-thrombosed hemorrhoid at the 9 o'clock position.  (Doc. 47, ¶¶ 8,9; *Id.*).
After discussing the risks and benefits of an incision and drainage procedure with
Buttolph, Schisler cleansed the area with betadine and anesthetized the area
with Lidocaine, lanced the hemorrhoids with a scalpel, and re-cleansed the area.
(Doc. 47, ¶¶ 10-12)[1].  Schisler instructed him to use Epsom Salt compresses with

---

[1] In his statement of material facts, Buttolph states that Schisler used "unsterile, used, inmate
shower towels and placed them directly on the open cut to soak up the blood."  (Doc. 54, ¶ 5).
This statement is contradicted by his deposition testimony in which he testified that the towels
were clean towels from the laundry cart and that, in any event, he is not advancing a claim based

washcloths three times a day for a week, to use a seat cushion, prescribed Proctosol hemorrhoid cream three times a day as needed, Tucks medicated pads, Tramadol 50mg three times a day as needed for pain, ASA 325mg once a day, and scheduled a follow-up appointment in two weeks. (Doc. 47, ¶ 13). According to Buttolph, his pain medication was delayed for over a week. (Doc. 54, ¶ 6). He returned for his follow-up appointment on October 6, 2010. (Doc. 47, ¶ 14; Doc. 54, ¶ 7). Following an examination, Schisler directed him to continue the Proctosol and Tucks pads as prescribed and follow up as needed. (*Id.* at 14, 15; *Id.* at 7).

He began experiencing problems again on or about November 15, 2010. (Doc. 54, ¶ 8). Schisler issued a verbal order for use of Epsom salt compresses three times per day as needed. (Doc. 47, ¶ 17; Doc. 54, ¶ 9).

C.     2011

Schisler next examined Buttolph on March 8, 2011 during a chronic care appointment. (*Id.* at 18; *Id.*). It was noted that Plaintiff's external hemorrhoids were stable. (*Id.*; *Id.*).

During an April 20, 2011 examination, Schisler documented that Buttolph had severe hemorrhoids, including one small tender thrombosed hemorrhoid, and prescribed Anusol, Tucks pads, stool softeners and indicated that prior treatment

---

on this conduct. (Doc. 47-3, p. 7). He simply doesn't "believe a doctor or PAC in any other facility would have ever grabbed towels in a non-emergency situation." ("*Id.*").

included an incision and drainage. (*Id.* at 20, 21; *Id.* at 10). Schisler offered to

lance and drain the small hemorrhoid; Buttolph declined that option. (Doc. 54, ¶

11).

On June 8, 2011, Schisler noted that his hemorrhoid condition was

unchanged. (Doc. 47, ¶ 22; Doc. 54, ¶ 13, 14). The hemorrhoid cream and Tucks

pads were continued. (*Id.*; *Id.*). Schisler again examined him on September 21,

2011, for renewal of medications and again continued the hemorrhoid medications.

(*Id.* at ¶ 24; *Id.* at 15).

On November 2, 2011, Buttolph notified the medical department that his

hemorrhoids were bothering him. (Doc. 54, ¶ 16). On November 16, 2011,

Schisler examined him based on his complaint of rectal bleeding. (*Id.* at 25; *Id.* at

17). The bleeding had stopped, but swelling of his hemorrhoids had

increased, and he complained of constipation. (*Id.* at 26; *Id.*). Schisler ordered the

continued use of Tucks, Proctosol and added Colace to address the constipation.

(*Id.* at 27; *Id.*). During his follow-up appointment the next week, Schisler noted

several small non-thrombosed hemorrhoids and indicated that three hemocult tests

were negative. (*Id.* at 28, 29; *Id.*). Schisler ordered x-rays, a urine analysis and

additional medications to address the constipation. (*Id.* at 30; *Id.*).

D.    <u>2012</u>

On January 12, 2012, Schisler noted that Buttolph continued to suffer with pain from hemorrhoids, rectal bleeding and clots and instructed him to continue his course of treatment.  (Doc. 54, ¶¶ 18, 19).

Buttolph's annual exam, conducted on March 21, 2012, noted that his hemorrhoids were stable.  (Doc. 47, ¶ 31; Doc. 54, ¶ 20).

On August 28, 2012, he submitted a sick call request stating "I need to get a remedy for my Hemorrhoids.  They keep me in pain… I have been here 44 months."  (Doc. 54, ¶ 21; Doc. 53-2, p. 37).  Schisler examined him on September 5, 2012, where he presented with complaints of bleeding and enlarged hemorrhoids; Schisler continued his medications.  (Doc. 47, ¶¶ 32, 33; Doc. 54, ¶ 22, 23).

On November 28, 2012, after examining Buttolph as part of the chronic care clinic process, Schisler continued his medications and scheduled him for a follow-up appointment ninety days later. (*Id*. at 34; *Id.* at 23).

E.    <u>2013</u>

On January 8, 2013, Buttolph wrote to the Pennsylvania State Attorney General stating that he needed knee surgery and noting that he needed to see a medical specialist for other medical issues.  (Doc. 54, ¶ 24).  In the letter, he

pointed out that he has been in the custody of Perry County for four years and that he believes it reasonable to expect different treatment than other county inmates. (Doc. 53-2, p. 62). Thereafter, emails were exchanged between Buttolph and various attorneys; PrimeCare informed the attorneys that the hemorrhoid procedure was an elective procedure. (Doc. 54, ¶¶ 25-28).

During his February 13, 2013, follow-up appointment, no new complaints were made, and his medications were continued. (Doc. 47, ¶¶ 35, 36; Doc. 54, ¶ 29). This is Buttolph's last documented treatment by Schisler. (*Id.* at 37; *Id.*).

Schisler avers that she provided medical treatment consistent with the standard of care based upon the information in her possession and available to her at the time she rendered treatment. (Doc. 47, ¶ 38). Buttolph disputes this with the following statements:

> 30. Plaintiff disputes defendants # 38 by declaring that Ms. Schisler was the person in charge of directly dealing with his medical issues from January 2009 until sometime Mid-year 2013 and therefore had intimate knowledge of plaintiff's serious medical need. This is verified by Ms. Schisler's own entries into plaintiff's medical record. Ms. Schisler thought that plaintiff's hemorrhoids were so serious she needed to perform a surgical procedure in an unsterile environment using unsterile instruments to try and rectify his medical problem and relieve pain.

> 31. Plaintiff further declares that Ms. Schisler believed plaintiff suffered from cont severe hemorrhoids and they were so serious as to offer to perform a second surgery under the same unsterile conditions. Ms. Schisler further described plaintiff's hemorrhoids as recurrent, and

that he suffered from continued rectal bleeding, clots, had a long history, suffered from pain, had enlarged hemorrhoids and then admits that this has been occurring x yrs. In fact, a time period of approximately 3 yrs. from the time of the first surgery until she left PCP in Mid-year 2013. See, Exhibit C at 00005-8 and 00010-11, and 00013.

32.    Plaintiff disputes Ms. Schisler provided treatment to plaintiff with standard of care based on the information in her possession. Ms. Schisler herself stated and wrote that plaintiff had a serious and severe, chronic condition for a long period of time. Ms. Schisler knew that the medical plan she was using on plaintiff was not taking care of plaintiff's hemorrhoids or alleviating the pain he was suffering due to his condition but doggedly pursued it anyway thereby knowingly subjecting plaintiff to the wanton infliction of pain.

33.    It is further proven by her own entries that Ms. Schisler allowed plaintiff to suffer for years and now claims she did everything she could based on her knowledge. The dispute of this claim is that her replacement, Mr. Navarro, based on just 4 months knowledge realized that plaintiff needed care and treatment that could not be provided at PCP.

34.    It is further proved by the letter from Dr. Burick that plaintiff suffered from PRE-OPERATIVE rectal bleeding and significant hemorrhoid disease.

35.    These facts prove that Ms. Schisler did not act as a reasonable person or doctor would have instead acting with deliberate indifference to her patients [sic] serious medical needs.

(Doc. 54, ¶¶ 30-35).

Buttolph next complained of discomfort from hemorrhoids on August 13, 2013. (Doc. 47, ¶¶ 40, 41: Doc. 54, ¶ 36). Specifically, he stated "My Roids are completely swollen shut!! Extreme pain, Severe bleeding. I got some Epsom salts

but not helping.  Can't put medicine on as can't get past to do so.  Size of marbles all around.  I think elective is out the door.  Pain.  Hard to sit, walk and lay down!!!" (Doc. 53-2, p. 39).  He received treatment on August 15, 2013.  (Doc. 47, ¶¶ 40, 41; Doc. 54, ¶ 36).  He received further treatment on September 5, 2013. (*Id.*; *Id.*).  On October 9, 2013, he requested sick call stating "Hemorrhoids are taking a toll.  Lots of heavy clotting – nonstop bleeding.  Stomach is constantly upset now." (Doc. 53-2, p. 41).

On December 11, 2013, Paul Navarro, CRNP arranged for Buttolph to be seen by an outside specialist (Carlisle Surgical Institute) for a colonoscopy and possible hemorrhoidectomy. (Doc. 47, ¶ 42; Doc. 54, ¶ 36). Adam J. Burick, D.O. performed a hemorrhoidectomy on January 23, 2014. (*Id.* at 43; *Id.*).  Carlisle Surgical Institute continued to treat Buttolph until March 14, 2014, when Dr. Burick determined that no additional follow-up was necessary. (*Id.* at 44; *Id.*).

F.    2014

On or about May 29, 2014, Plaintiff was transferred to the custody of the Pennsylvania Department of Corrections ("DOC").  (*Id.* at 45; Id.) Hemorrhoids were listed as a chronic condition on Buttolph's Transfer of Health Information form provided by PrimeCare.  (*Id.* at 46; *Id.*).

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.      Statute of Limitations

Defendants argue that the action is barred by the statute of limitations. In relying on prior court opinions, Buttolph misapprehends that it is "well-settled" that the date on which the cause of action accrued is January 6, 2014.  (Doc. 53, p. 12).  Neither the February 28, 2017 Memorandum of this Court (Doc. 26), nor the September 19, 2018 Opinion of the United States Court of Appeals for the Third

Circuit (Doc. 34-1), concluded that January 6, 2014, constituted a definitive accrual date. Rather, this Court, in considering Defendants' Rule 12(b)(6) motion, and in liberally construing the complaint, as required, concluded that his "claims accrued, at the very latest, on January 6, 2014." (Doc. 26, p. 9). This conclusion is solely based on the four corners of the original complaint and the documents attached thereto. (Doc. 1). In concluding that Buttolph's original complaint "was sufficient to withstand dismissal on statute-of-limitations grounds at the Rule 12(b)(6) stage[,]" the Third Circuit noted that "[i]n so deciding, we need not determine the applicable claim-accrual date as a matter of law." (Doc. 34-1, p. 3, n. 2). Since the issuance of these opinions, Buttolph has amended the complaint (Doc. 37), the parties have engaged in discovery, and the Court now has before it a motion for summary judgment. It is against this backdrop and with the benefit of a full record that we consider the statute of limitations issues anew.

A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). Buttolph's claim arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 PA. CONS. STAT. ANN. § 5524(2). The statute of

limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. *See Garvin v. City of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Defendants argue that Buttolph "definitely knows by 2012 or 2013 he thought he needed additional treatment that he was not receiving." (Dc. 48, p. 20). They cite to his January 2013 letter to the Pennsylvania Attorney General and his deposition testimony wherein he states that by February 2013, he began to complain about the medical treatment he was receiving at the Perry County Prison. (*Id.*).

Buttolph argues that "mid-July 2014 should be the date that he knew or should have known of his serious medical issues because after reading his medical files he finally knew the FULL extent of his hemorrhoids." (Doc. 53, p. 14) (emphasis in original). He also offers that he "could argue that January 23, 2014, should be the latest date of knowing the full extent as Dr. Burick explained it would take a second surgery to complete the hemorrhoidectomy." (*Id.* at 13, 14). In so arguing, he seems to be invoking Pennsylvania's discovery rule which is "an exception to the requirement that a complaining party must file suit within the statutory period." *Communications Network International, Ltd.*, 187 A.3d at 961

(quoting *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 919 (Pa. Super. Ct. 2005)). The discovery rule is applicable where the plaintiff "is reasonably unaware that his or her injury has been caused by another party's conduct." *Gleason v. Borough of Moosic*, 609 Pa. 353, 15 A.3d 479, 484 (2011). If the discovery rule is applicable, the running of the statute of limitations is tolled. *Id.*

Buttolph expressed dissatisfaction with his treatment as early as 2012. On August 28, 2012, in his sick call request he stated "I need to get a remedy for my Hemorrhoids. They keep me in pain… I have been here 44 months." (Doc. 54, ¶ 21; Doc. 53-2, p. 37). In January 2013, he sent a letter to the Pennsylvania State Attorney General informing the Attorney General that he has been in the custody of Perry County for four years and needs to see a medical specialist for various medical issues. (Doc. 54, ¶ 24). Thereafter, emails were exchanged between Buttolph and various attorneys. At that time, PrimeCare informed the attorneys that the hemorrhoid procedure was an elective procedure. (Doc. 54, ¶¶ 25-28). In his August 11, 2013 request for sick call he stated "[m]y Roids are completely swollen shut!! Extreme pain, Severe bleeding. I got some Epsom salts but not helping. Can't put medicine on as can't get past to do so. Size of marbles all around. I think elective is out the door. Pain. Hard to sit, walk and say down!!!" (Doc. 53-2, p. 39).

Based on the above, the Court concludes that Buttolph's cause of action accrued in August 2013, if not earlier. By this time, he had expressed that the remedies provided thus far did not resolve his issues, had written to the state attorney general, had attorneys approach PrimeCare on his behalf, and had been notified that PrimeCare considered any surgical procedure related to his hemorrhoids to be elective.

Further, the discovery rule is not applicable because Buttolph was clearly aware of his alleged injury and its cause in August 2013. There simply is no argument or allegation that he was unaware of the alleged injuries to the extent the discovery rule could plausibly toll the statute of limitations.

The complaint filed on February 22, 2016, was clearly filed beyond the expiration of the two-year statute of limitations. Defendants are therefore entitled to an entry of summary judgment.

## B. Merits

Even had the action been timely commenced, Defendants would be entitled to an entry of summary judgment on the merits. Pretrial detainees may assert Section 1983 claims for inadequate medical care under the Fourteenth Amendment's substantive due process clause. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *Colburn v. Upper Darby Twp.*, 838

F.2d 663, 668 (3d Cir. 1988). "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale*, 318 F.3d at 581. We will evaluate Buttolph's claim under the same standard used to evaluate similar claims brought under the Eighth Amendment. *Id.* at 581-82.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Id.* at 104-05. To succeed on such a claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

1. <u>Defendant Schisler</u>

It is undisputed that Buttolph had serious medical needs as a pretrial detainee due to his hemorrhoid condition. Essentially at issue is whether Schisler acted with deliberate indifference in treating Buttolph's hemorrhoid condition. Deliberate indifference occurs when prison officials "intentionally deny[ ] or delay[ ] access to medical care or interfer[e] with the treatment once prescribed."

*Pearson*, 850 F.3d at 534 (quoting Estelle, 429 U.S. at 104-05).  A mere complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid [constitutional] claim of medical mistreatment[.]" *Estelle*, 429 U.S. at 106.  Moreover, "mere disagreement as to the proper medical treatment does not support a claim of" deliberate indifference. *Pearson*, 850 F.3d at 535 (internal quotations omitted).  Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id.*  As long as a physician exercises professional judgment, his or her behavior does not violate a detainee's constitutional rights.  *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

No reasonable factfinder could conclude from the record before us that Schisler acted with deliberate indifference.  On every occasion Buttolph presented for treatment, Schisler examined him, took into consideration his hemorrhoid symptoms and complaints, rendered treatment and medical advice, and prescribed medications.  There is not a single instance where Buttolph requested medical attention and was denied.  His main argument, that he should have been referred to a specialist or scheduled for surgery sooner, constitutes a "mere disagreement as to the proper medical treatment." *Lanzaro*, 834 F.2d at 346.  It is clear from the

record that Schisler employed professional judgment in treating Buttolph's condition every time he presented with complaints and symptoms. *See Brown*, 903 F.2d at 278. This precludes a finding that she acted with the "obduracy and wantonness" necessary to sustain an Eighth Amendment violation, *see Whitley v Algers*, 475 U.S. 312, 319 (1986).

### 2.     Defendants Hoffman and Prime Care

#### a.     *Hoffman*

Buttolph argues that "Dr. Hoffman admits to being Ms. Schisler's direct supervisor and to signing and approving all treatments rendered by Ms. Schisler. Dr. Hoffman was/is the President and Corporate Medical Director of PrimeCare and, as such, signs for PrimeCare every time he signed plaintiff's medical records and approved the treatment or lack of treatment to plaintiff's hemorrhoids. Dr. Hoffman's signature carries the weight and power of Primecare the corporation thereby creating policy when he signed the medical records." (Doc. 53, p. 19).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in Section 1983 civil rights

actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. A plaintiff must establish the particulars of conduct, time, place, and the person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

"[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

With regard to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

(finding that in a § 1983 suit, "each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct").  Liability "cannot

be predicated solely on the operation of *respondeat superior*."  *Id.  See also*

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)

Buttolph fails to produce evidence to show the existence of every element

essential to either theory of supervisory liability.  A blanket statement that

Hoffman signed, and approved treatment plans administered by Schisler, is

insufficient.  Buttolph fails to establish that Hoffman established and maintained a

policy, practice or custom which directly caused the constitutional harm, or that he

personally participated in violating his rights, directed Schisler to violate them, or,

as the persons in charge, had knowledge of and acquiesced in Schisler's alleged

violations.  Moreover, his opposing argument confirms that he is seeking to impose

liability on Hoffman based solely on his role as Schisler's supervisor. (Doc 53, p.

19).

b.    *PrimeCare*

PrimeCare, as a private entity contracted by a prison to provide health care

for inmates, cannot be held liable for the acts of its employees under *respondeat*

*superior* or vicarious liability.  *Natale v. Camden County Corr. Facility*, 318 F.3d

575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To hold PrimeCare liable, Buttolph "must provide evidence that there was a relevant [PrimeCare] policy or custom, and that the policy caused the constitutional violation [he] allege [s]." *Id.* (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can establish causation by "demonstrating the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407. Buttolph wholly fails to meet his burden concerning a relevant PrimeCare policy or custom that caused a constitutional violation. PrimeCare is entitled to summary judgment.

## IV.    **<u>CONCLUSION</u>**

Based on the foregoing, Defendants' motion (Doc. 46) for summary judgment will be granted.

An appropriate Order will issue.